United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JAMES WEAVER, Plaintiff, v. CITY OF SANTA CLARA, et al., Defendants. | Case No. 5:12-cv-06334-PSG **ORDER RE: POST-TRIAL MOTIONS** **(Re: Docket Nos. 115, 118, 125)** |

Early one morning, Plaintiff James Weaver slept quietly in a yard off a street in Santa Clara, California. He was homeless. Weaver bothered no one, and no one bothered him. But without much warning, Weaver was suddenly rousted from his quiet sleep to what can only be described as a horror—a police dog named Jax biting him as he lay defenseless. Jax and his handler, a Santa Clara police officer, thought they had found the felon who just a short while earlier had fled from a routine traffic stop. Sadly, Weaver had nothing to do with the parolee, something the officer and others involved quickly realized and acknowledged.

After several days of trial, a jury of nine rendered a verdict that Weaver had suffered excessive force and coercion in violation of California's Bane Act.[1] The jury also awarded Weaver

[1] *See* Docket No. 107.

United States District Court
For the Northern District of California

$12,000 in damages.[2] Weaver now seeks additional civil penalties, trebling and attorney's fees.[3] Defendant Kevin Kyle, in his official capacity as Santa Clara Police Chief, challenges Weaver's penalty and trebling claims, disputes the amount of his requested fees and argues that Weaver's damages are irreconcilable with the proof introduced at trial.[4]

The parties submitted extensive briefs on these issues and appeared for a hearing.[5] After considering both their written and oral submissions, the court finds that only certain fees, and no penalties or trebling, are warranted, as is a reduction in the damages reflected in the judgment.

**I.**

A judgment following a jury verdict is not necessarily the final word about who owes what in a federal lawsuit. Fed. R. Civ. P. 59(e) authorizes a court to alter or amend a judgment "(1) . . . to correct manifest errors of law or fact upon which the judgment rests; (2) . . . [to address] newly discovered or previously unavailable evidence; (3) . . . to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law."[6]

"A court considering a Rule 59(e) motion is not limited merely to these four situations, however."[7] For example, in cases involving claims for medical expenses, a court may alter the judgment to assure recovery of damages only for medical expenses that the plaintiff already incurred.[8] And for certain claims under the Bane Act,[9] a court may alter the judgment to assess a

---

[2] *See id.*

[3] *See* Docket Nos. 118, 125.

[4] *See* Docket Nos. 116, 120, 135.

[5] *See* Docket No. 148.

[6] *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999) (en banc).

[7] *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011).

[8] *See Howell v. Hamilton Meats & Provisions, Inc.*, 52 Cal. 4th 541, 551 (2011).

civil penalty of $25,000 as proscribed by California Civil Code §52(b)(2),[10] as well as a trebling of damages and liability for multiple offenses pursuant to Cal. Civ. Code §52(a).[11]

Where authorized, the court also may award attorney's fees. The Bane Act provides for an award of reasonable attorney's fees for the prevailing party, both to assure vigilance in the vindication of constitutional rights and to ease their vindication.[12] A lodestar-adjustment method

---

[9] *See* Cal. Civ. Code §52.1. ("(a) If a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, the Attorney General, or any district attorney or city attorney may bring a civil action for injunctive and other appropriate equitable relief in the name of the people of the State of California, in order to protect the peaceable exercise or enjoyment of the right or rights secured. An action brought by the Attorney General, any district attorney, or any city attorney may also seek a civil penalty of twenty-five thousand dollars ($25,000). If this civil penalty is requested, it shall be assessed individually against each person who is determined to have violated this section and the penalty shall be awarded to each individual whose rights under this section are determined to have been violated. (b) Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured").

[10] *See* Cal. Civ. Code §52(b)(2) ("Whoever denies the right provided by Section 51.7 or 51.9, or aids, incites, or conspires in that denial, is liable for each and every offense for the actual damages suffered by any person denied that right and, in addition, the following: . . . (2) A civil penalty of twenty-five thousand dollars ($25,000) to be awarded to the person denied the right provided by Section 51.7 in any action brought by the person denied the right, or by the Attorney General, a district attorney, or a city attorney"). Section 51.7 has to do with violence based on discrimination, and §51.9 deals with sexual harassment.

[11] *See* Cal. Civ. Code §52(a) ("Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51, 51.5, or 51.6, is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount o factual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights in Section 51, 51.5, or 51.6"). Section 51 is the Unruh Act, §51.5 deals with business establishment discrimination, and §51.6 is the Gender Tax Repeal Act.

[12] *See* Cal. Civ. Code §52.1(h); *cf.* S. Rep. No. 1011, 94th Cong., 2d Sess., reprinted in (1976) U.S. Code Cong. & Ad. News, p. 5908; H.R. Rep. No. 1558, 94th Cong., 2nd Sess. (1976) quoted in *Seattle Sch. Dist. No. 1 v. Washington*, 633 F.2d 1338 (9th Cir. 1980), *aff'd.*, 458 U.S. 457 (1982) ("to eliminate financial barriers to the vindication of constitutional rights and to stimulate voluntary compliance with the law"); *Carey v. Piphus*, 435 U.S. 247, 257, n.11 (1978) ("assurance that

determines the amount of reasonable attorney fees, calculated by multiplying the number of hours reasonably spent by each billing professional with the reasonable hourly rate for each biller.[13] A party seeking fees "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates,"[14] "to prove and establish the reasonableness of each dollar, each hour, above zero."[15] There is no required relationship between the amount of fees awarded and the amount of damages awarded to a plaintiff,[16] but a number of factors may further adjust the attorney's fee determination up or down.[17]

On September 24, 2011, Kevin Kyle served as Police Chief of the City of Santa Clara. Early in the morning hours that day, James Weaver, a homeless man, was sleeping in the front yard of an abandoned house located at 1575 Pomeroy Way. Weaver heard no sirens, but was awakened by the sound of several police officers screaming at him. Weaver was groggy, but as he came to he confronted Jax, a police dog brought to the scene by Officer Nathan Crescini, his canine handler. Crescini and a number of other Santa Clara police officers were engaged in a manhunt for a parolee who had fled from a car stopped in the area a short while earlier.

Jax bit Weaver on the right elbow and held onto it for a few seconds. Weaver did not resist the dog (or officers) in any way, but Jax then repeatedly bit Weaver on his back as Weaver crouched in defense. Eventually an officer standing in front of Weaver told the other officers to lift

---

agents of the State will not deliberately ignore due process rights"); *Dennis v. Chang*, 611 F.2d 1302, 1306 (9th Cir. 1980).

[13] *See Serrano v. Priest*, 20 Cal. 3d 25, 48 (1977); *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).

[14] *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

[15] *Flitton v. Primary Residential Mortgage, Inc*., 614 F.3d 1173, 1178 (10th Cir. 2010).

[16] *See City of Riverside v. Rivera*, 477 U.S. 561, 576-77 (1986); *Cunningham v. County of Los Angeles*, 859 F.2d 705, 710 (9th Cir. 1988).

[17] *See Thayer v. Wells Fargo Bank*, 92 Cal. App. 4th 819, 835 (2001).

United States District Court
For the Northern District of California

Weaver up. They lifted him to his knees and shined a flashlight in his face. The officer with the flashlight asked an officer who had just arrived on the scene whether Weaver fit the description of a suspect the police had been pursuing, and the officer said no. The officers brought Weaver, handcuffed, off the property and sat him on the curb. The officers then took the handcuffs off and asked Weaver if he wanted medical treatment. After Weaver declined, he was allowed to leave the scene.

Weaver filed this suit, alleging a variety of civil rights violations. After various pretrial motions, only one claim remained for trial—a Bane Act claim against Kyle in his official capacity as Police Chief. Before deliberations, the jury was instructed to consider: whether there was an unlawful detention of Weaver; if the officers used excessive force during the detention; if there was coercion separate from the use of excessive force and whether the officer's conduct was a substantial factor in causing Weaver harm.[18] Witnesses disputed how many times Jax bit Weaver, and the jury came to no specific conclusion on the matter.[19] The jury nevertheless found the involved officers used force excessively in violation of the Bane Act, and that Kyle's actions included coercion separate from and in addition to the excessive use of force.[20] The jury awarded Weaver $3,000 dollars for medical expenses and $9,000 for pain and suffering for a total of $12,000 in compensatory damages.[21]

Kyle now requests that the court reduce the jury's finding of $3,000 for medical expenses to $1,030, based on what the evidence showed Weaver was charged.[22] Weaver in turn requests that

---

[18] *See id.* at 8.

[19] *See id.* at 7.

[20] *See* Docket Nos. 107, 108.

[21] *See id.*

[22] *See* Docket No. 116 at 1-2.

United States District Court
For the Northern District of California

the court add a civil penalty of $25,000,[23] and then a trebling of that amount[24] to $111,000, to be applied to each of between eight to ten bites Weaver sustained—yielding roughly $999,000.[25] Weaver further requests attorney's fees through trial in the amount of $151,025.75, $9,134.81 in non-statutory costs incurred in connection with this matter, a multiplier of 2.0 under California law[26] and $14,066.25 for fees additional fees incurred in pursuing his fees award.[27]

**II.**

This court has jurisdiction under 15 U.S.C. § 1367. The parties consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).[28]

**III.**

A.

The court first considers Kyle's request regarding the amount of actual damages awarded for Weaver's medical expenses.

Rule 59(e) is an appropriate post-trial procedure for the court to reconsider damages[29] or to reduce a judgment, where appropriate based on the evidence presented at trial.[30] The California Supreme Court has held a plaintiff may recover damages only for "incurred" medical expenses—

---

[23] *See* Cal. Civ. Code §52(b)(2).

[24] *See* Cal. Civ. Code §52(a).

[25] *See* Docket No. 118 at 16.

[26] *See* Docket No. 125.

[27] *See* Docket No. 147.

[28] *See* Docket Nos. 20, 21.

[29] *See Hastert v. Illinois State Bd. of Election Comm'rs*, 28 F.3d 1430, 1438-39 (1993); *Varley v. Tampax*, 855 F.2d 696, 696 (1988).

[30] *See, e.g. Wallis v. Centennial Insurance Company, Inc.*, Case No. 08-cv-2558-WBS-AC, 2014 WL 670199 at *2-3 (E.D. Cal. Feb. 20, 2014).

United States District Court
For the Northern District of California

such as those either paid or still owed to the treatment provider.[31] Although an award of damages may include certain future detriment,[32] and absolute certainty is not required,[33] here future damages were not a component of the trial.[34] The only evidence of medical expenses either party produced was a $1,030 bill from Valley Medical Center.[35] Because the only testimony as to future medical expense was vague,[36] and the jury was not instructed on future medical expense,[37] the jury's determination of $3,000 in medical expenses was prohibitively speculative.

B.

With Kyle's request resolved, the court turns to Weaver's requests pursuant to Cal. Civ. Code §52 for penalties, trebling and an assessment for each bite Weaver allegedly suffered. Under the legal standards applicable to each, none of these requests is justified.

***First***, Weaver's request for civil penalties runs afoul of long-standing precedent in this district. Weaver claims that he is entitled to a $25,000 statutory penalty under §52(b)(2). But it is settled in the Northern District that the reference to "damages" (and not "civil penalty") in

---

[31] *See Howell*, 52 Cal. 4th at 551.

[32] *See* Cal. Civ. Code §§ 3283, 3333.

[33] *See Bihun v. AT&T Information Systems, Inc.*, 13 Cal. App. 4th 976, 995 (1993); *Behr v. Redmond*, 193 Cal. App. 4th 517, 553 (2011); *Ostertag v. Bethlehem Etc. Corp.*, 65 Cal. App. 2d 795, 805-806 (1944); *Garcia v. Duro Dyne Corp.*, 156 Cal. App. 4th 92, 99 (2007).

[34] *See* Docket No. 101 at 11-12 ("The reasonable value of necessary medical care, treatment, and services received to the present time"); Docket No. 7 ("What is the total amount of damages, if any, suffered by Weaver?").

[35] *See* Exhibit No. 125.

[36] *See* Docket No. 119 at 4. There were no medical experts. *See* Docket No. 122 at 1.

[37] *See* Docket No. 101 at 11-12 ("The reasonable value of necessary medical care, treatment, and services received *to the present time*"); Docket No. 7 ("What is the total amount of damages, if any, suffered by Weaver . . . ?").

§52.1(b), the statute under which Weaver brought his claim, eliminates the possibility of a $25,000 penalty under §52(b)(2).[38]

***Second,*** Weaver's request for trebling cannot be squared with the plain language of §52(a), the section Weaver relies on here. Under its own terms, §52(a) applies to violations of Cal. Civ. Code §51 (discrimination in business establishments), §51.5 (discrimination in business transactions), and §51.6 (discrimination in business establishments due to gender), not violations like Weaver's under §52.1(b).[39]

***Third***, there is no basis to multiply the assessed damages by the number of times dog bit man.[40] A single encounter with an officer may constitute multiple uses of force even if it lasts only minutes or seconds,[41] and even if force is justified initially, subsequent force may not be.[42] But as with trebling of damages, §52(a) does not apply here because the case has nothing to do with §§51,

---

[38] *See Cuviello v. City of Oakland*, 2010 WL 3063199 at *5-7 (N.D. Cal. 2010); *Ennis v. City of Daly* City, 2011 WL 672655 at *8 (N.D. Cal. 2011); *Bolbol v. City of Daly City*, 754 F. Supp. 2d 1095, 1117 (N.D. Cal. 2010).

[39] Because treble damages do not apply here, the court does not engage in the debate over whether treble damages are punitive in nature and therefore unavailable against a police chief being sued in his official capacity. *See* Cal. Gov. Code §818; *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1996) (holding a suit against a government officer in his official capacity is equivalent to a suit against the government entity itself); *Kentucky v. Graham*, 473 U.S. 159, 167 n.13 (1985); *Mitchell v. Dupnik*, 75 F.3d 517, 527 (9th Cir. 1996) (finding it was an error to award punitive damages against public employees in their official capacities); *M.J. ex. rel. G.J. v. Clovis Unified School Dist.*, Case No. 1:05-cv-00927-OWW-LJO, 2007 WL 1033444 at *13 (E.D. Cal. Apr. 3, 2007) (treble damages under the Unruh Act are not available against a school district); *Wells v. One2One Learning Foundation*, 39 Cal. 4th 1164, 1196 (2006).

[40] *See* Docket No. 118 at 9; *but see AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 826 (Cal. 1990); *Lozada v. City and County of San Francisco*, 145 Cal. App. 4th 1139, 1162 (2006); *cf. Blythe v. Ayres*, 96 Cal. 532, 576 (1892) (liberally construing California's civil rights laws); *Orloff v. Los Angeles Turf Club* 30 Cal.2d 110 (1947); *See Koire v. Metro Car Wash*, 40 Cal. 3d 24, 28 (Cal. 1985) (interpreting the Unruh Act).

[41] *See Ellis v. Wynalda*, 999 F.2d 243, 247 (1993); *Sanders v. City of Fresno*, 551 F. Supp. 2d 1149, 1167 (2008); *Mattos v. Agarano*, 661 F.3d 433, 448-49 (2011); *Dickerson v. McClellan*, 101 F.3d 1151, 1162 n.9 (6th Cir. 1996).

[42] *See Waterman v. Batton*, 393 F.3d 471, 481 (2005); *Hopkins v. Andaya*, 958 F.2d 881, 886–88 (1992), *Russo v. City of Cincinnati*, 953 F.2d 1036, 1041 (1992).

51.5, or 51.6: discrimination in business establishments, transactions or gender relations. Even if the statute did apply, under *Vogel v. Rite Aid Corp.*,[43] Weaver experienced a single encounter with Jax. No case says each bite constitutes multiple uses of force and in any event the jury never factually determined how many "uses of force" occurred during Weaver's encounter with Kyle.[44] The court cannot now do so.

C.

Turning to the issue of fees, reasonable attorney's fees are calculated by multiplying the number of hours reasonably spent by each billing professional with the reasonable hourly rate for each professional.[45] To determine the reasonable hourly rate, the court looks at the reasonable market value of similar types of litigation,[46] even when the fee arrangement was contingent,[47] to

---

[43] *See* Docket No. 108; Cal. Civ. Code §52(a); *Vogel*, 2014 WL 211789 at *10-11; *Hubbard v. Rite Aid Corp.*, 433 F. Supp. 2d 1150, 1170 (2006); *Yates v. Vishal Corp.*, Case No. 3:11-cv-00643, 2013 WL 6073516 at *3 (N.D. Cal. Nov. 18, 2013); *Feezor v. Del Taco*, 431 F. Supp. 2d 1088, 1088, 1090 (2005); *Molsky v. Rapazzini Winery*, 400 F. Supp. 2d 1208, 1211 (2005); *Lentini v. Cal. Center for the Arts*, 370 F.3d 837, 848 (2004).

[44] During trial, the court sustained objections to unsubstantiated testimony concluding that multiple bites from a K-9 indicated separate and multiple uses of force. *See* Docket No. 118 at 7; *cf. L.A. County MTA v. Superior Ct.*, 123 Cal. App. 4th 261, 269, 276 (2004).

[45] *See Serrano*, 20 Cal. 3d at 48; *Hensley*, 461 U.S. at 431 ("reasonably expended in pursuit of the ultimate result achieved in the same manner that an attorney traditionally is compensated by a fee-paying client for all time reasonably expended on a matter"); *See also Moreno v. City of Sacramento* (9th Cir. 2008) 534 F.3d 1106, 1111 ("The number of hours to be compensated is calculated by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client"); *Norman v. Housing Auth.*, 836 F.2d 1292, 1306 (11th Cir. 1988) ("The measure of reasonable hours is determined by the profession's judgment of the time that may be conscionably billed and not the least time in which it might theoretically have been done").

[46] *See, e.g., Davis v. City & County of San Francisco*, 976 F.2d 1536, 1545 (9th Cir. 1992), *modified on other grounds*, 984 F.2d 345 (9th Cir. 1993) ("[R]ates should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity"). *See also Serrano*, 20 Cal. 3d at 49; *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 61 (2008); *Edgerton v. State Personnel Bd.* 83 Cal. App. 4th 1350, 1363 (2000); *Davis v. Prison Health Services*, Case No. 3:09-cv-2629-SI, 2012 U.S. Dist. LEXIS 138556, at *23-24 (N.D. Cal. Sept. 25, 2012).

[47] *See PLCM Group, Inc. v. Drexler*, 22 Cal. 4th 1094, 1098 (Cal. 2000); *Nemecek & Cole v. Horn*, 208 Cal. App. 4th 641, 651 (2012); *In re Tobacco Cases I*, 193 Cal. App. 4th 1591, 1604 (2011) (finding California Attorney General's office, if the prevailing party, is entitled to market rates in

come up with a "lodestar." In addition to the market rate, courts factor into this equation the skill attorneys employ during the litigation and the attention attorneys give to the file.[48]

After calculating the lodestar figure, the court may further adjust the amount by considering (1) the time and labor required, including time limitations imposed by the client and the nature and length of the professional relationship with the client; (2) the novelty and difficulty of the questions presented and skill required to perform legal services properly; (3) preclusions from other employment; (4) the customary fee in the community for similar work; (5) whether the fee is fixed or contingent; (6) the amount involved and the results obtained;[49] (7) the experience, reputation and ability of the attorneys; (8) the undesireability of the case and (9) awards in other cases.[50]

---

action to enforce consent decree); *Center for Biological Diversity v. County of San Bernardino*, 188 Cal. App. 4th 603, 614 (2010); *Chacon v. Litke* 181 Cal. App. 4th 1234, 1258 (2010); *Graciano v. Robinson Ford Sales, Inc.* 144 Cal. App. 4th 140, 156 (2006); *Camacho*, 523 F.3d at 980 (directing district court to determine "the prevailing hourly rate in the [forum community] for work that is similar to that performed in this case, by attorneys with the skill, experience and reputation comparable to that of [plaintiff's] attorneys"). Private attorneys who charge their clients at billing rates lower than the reasonable market value of their services or work pro bono are not restricted to those rates in claiming fees. *Building a Better Redondo Beach, Inc. v City of Redondo Beach* 203 Cal.App.4th 852, 870 (2012); *International Longshoremen's & Warehousemen's Union v. Los Angeles Export Terminal, Inc.*, 69 Cal. App. 4th 287, 302 (1999); *San Bernardino Valley Audubon Soc'y v. County of San Bernardino*, 155 Cal. App. 3d 738, 755 (1984). *See also United Steelworkers v. Retirement Income Plan*, 512 F.3d 555, 564 (9th Cir. 2008) (holding that affidavits of the plaintiffs' attorneys as well as other attorneys concerning prevailing fees in the community, as well as rate determinations in other cases, constituted satisfactory evidence of the prevailing market rate); *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1214 (9th Cir. 1978); *Davis v. City & County of San Francisco*, 976 F.2d at 1548 (finding that where there has been a delay in payment during the pendency of the litigation, current rates should be applied to adjust for inflation).

[48] *See PLCM Group, Inc.*, 22 Cal. 4th at 1095-96.

[49] *See Thayer*, 92 Cal. App. 4th at 835.

[50] *See Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 576, 586 (2008); *PLCM Group, Inc.*, 22 Cal. 4th at 1095; *Ketchum v. Moses*, 24 Cal. 4th 1122 at 1132 (2001).



United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Weaver has requested $375 per hour for DeWitt M. Lacy, $800 per hour for John L. Burris, $400 per hour for Adante Pointer, $200 per hour for James Cook,[51] $180 per hour for Pardeep Heyer, $180 for Jillian Vida Smith,[52] and $775 per hour for Pamela Y. Price.[53]

Lacy logged the bulk of Weaver's claimed hours for attorney's fees. Lacy's declaration supplies little information about his trial experience, other than he has been practicing for roughly five and a half years and he has "prepared for and second-chaired several police misconduct cases."[54] He has worked with the Burris law firm since December 2011, and his declaration mentions no prior civil rights litigation experience.[55] Weaver's motion mentions no other court orders setting Lacy's fees. Kyle points to an order from Judge William B. Shubb in the Eastern District of California setting Lacy's reasonable hourly rate at $175.[56] Kyle also notes his own counsel's billing rate of $170 per hour,[57] and associate attorney awards of $200[58] and $275 by other courts in the Northern District. In light of the rate cited by Kyle,[59] $275 is a reasonable rate for Lacy.[60]

---

[51] Although Weaver alternatively revers to James Cook and James Carter in his papers, the court assumes they are the same person.

[52] *See* Docket No. 128-4 at 1.

[53] *See* Docket No. 154-1 at 1.

[54] Docket No. 128 at 2.

[55] *See id.*

[56] *See Deocampo, et al. v. Potts, et al.*, Case No. 2:06-1283-WBS-CMK, Docket No. 204 at 28 (February 25, 2014) (also attached to Kyle's request for judicial notice, Exhibit A, at Docket No. 140-1).

[57] *See* Docket No. 139 at ¶7.

[58] *See e.g.*, *Abad v. Williams, Cohen & Gray, Inc.*, Case No. 4:06-cv-2550-SBA-JCS, 2007 WL 1839910, at *2 (N.D. Cal. Apr. 23, 2007).

[59] *See, e.g.*, *J&J Sports Productions, Inc. v. Campos*, Case No. 5:13-cv-4257-BLF, 2014 WL 3593591, at *5 (N.D. Cal. July 18, 2014).

[60] *See id.*

**United States District Court**
For the Northern District of California

The proposed rates of Weaver's other attorneys and their staff also require adjustments. Burris seeks $800 per hour, when he received only $400 per hour by Judge Shubb's ruling earlier this year.[61] Acknowledging the higher rates appropriate to litigation in Silicon Valley, the court finds $600 per hour to be appropriate. Weaver supplies little information regarding Pointer, thought it seems he has been practicing since 2005.[62] Very little information is provided regarding the other staff, so the court adjusts their rates similarly. Cook, who seeks $200 per hour, shall receive $150. Heyer, who seeks $180 per hour, shall receive $135 per hour. Smith, who seeks $180 per hour, shall receive $135 per hour.[63] Price, who seeks $775, shall receive $700.[64]

Weaver's counsel claims they worked a total of 446.8 billable hours. 75.75 of Cook's hours are preparation of trial slides and trial assistance with technology, and expenses for video technicians are not necessarily recoverable.[65] 33.5 of the claimed hours were for internal conferences, which multiple attorneys should not usually claim,[66] extra hours for a largely

---

[61] *See Deocampo, et al. v. Potts, et al.*, Case No. 2:06-1283-WBS-CMK, Docket No. 204 at 28 (Feb. 25, 2014) (also attached to Kyle's request for judicial notice, Exhibit A, at Docket No. 140-1).

[62] *See* Docket No.127 at 12; Docket No. 129 at 14.

[63] *See* Docket No. 128-4 at 1.

[64] *See* Docket No. 127 at 12; *Davis v. City & County of San Francisco*, 976 F.2d at 1544; *Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986); *In re Nucorp Energy, Inc*., 764 F.2d 655 (9th Cir. 1985); *Harris v. McCarthy*, 790 F.2d 753, 758-59 (9th Cir. 1986); *Jordan v. Multnomah County*, 815 F.2d 1258, 1264 (9th Cir. 1987); *Manhart v. City of Los Angeles Department of Water and Power*, 652 F.2d 904, 909 (9th Cir. 1981), *vacated on other grounds*, 461 U.S. 951 (1983).

[65] *See* Docket No. 128-2 at 12-15; *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 891 (5th Cir. 1993); *but see Moreno*, 534 F.3d at 1113-1114 (interviews and investigation compensable); *Missouri v. Jenkins*, 491 U.S. 271, 287 (1989) (paralegals, law clerks, and other legal workers' time compensable); *Davis v. City & County of San Francisco*, 976 F.2d at 1543-1545, *amended*, 984 F.2d 345 (media time compensable); *Armstrong v. Davis*, 318 F.3d 965, 971-973 (9th Cir. 2003) (work on collateral litigation that disposes of issues central to the main case can be compensable); *Hutto v. Finney*, 437 U.S. 678, 693 (1978) (appellate time compensable); *Keith v. Volpe*, 833 F.2d 850 (9th Cir. 1987) (post-judgment time spent on compliance or monitoring compensable).

[66] *See* Docket No. 128-2 at 2; Docket No. 138 at 9-10; *U.S. v. Nosal*, Case No. 08-cr-0237-EMC, 2014 WL 2109948, at *7 (N.D. Cal. May 20, 2014).

boilerplate complaint,[67] unsuccessful motions[68] and preparing for a witness never called.[69] Weaver's counsel devoted 31.45 hours to opposing Defendants' motion for summary judgment, which resulted in the dismissal of all of Weaver's federal claims.[70] Considering the reasonable effort required to achieve these results, a reduction of all of these challenged hours by approximately 50 percent is warranted.[71] Cook may claim 38 hours. Burris's hours are reduced by 3.9 hours.[72] Lacy's hours are reduced by 20.15 hours.[73] Pointer's hours are reduced by 7.35 hours.[74]

With these adjustments made, the court arrives at the following lodestar calculations: [75]

| **Attorney** | **Time** | **Rate** | **Amount** |
|---|---|---|---|
| John L. Burris | 7.6 | $600 | $4,560 |

---

[67] *See* Docket No. 128-2 at 2; Docket No. 138 at 9.

[68] *See* Docket No. 21 at 4-5; Docket No. 29 at 2-4; Docket No. 61 at 4-5; Docket No. 128-2 at 5-7; Docket No. 138 at 9-10; *Jadwin v. County of Kern*, 767 F. Supp. 2d 1069, 1111 (E.D. Cal. 2011).

[69] *See* Docket No. 138 at 10; Docket No. 128-2 at 13.

[70] *See* Docket No. 32; Docket No. 61 at 5-6; Docket No. 128-2 at 6-7; Docket No. 138 at 10.

[71] *See Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992) ("Despite the "concise but clear" requirement, in cases where a voluminous fee application is filed in exercising its billing judgment the district court is not required to set forth an hour-by-hour analysis of the fee request. . . . [T]he district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure 'as a practical means of trimming the fat from a fee application.'") (*citing New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1146 (2d Cir.1983); *Daggett v. Kimmelman*, 811 F.2d 793, 797–98 (3d Cir.1987); *Tomazzoli v. Sheedy*, 804 F.2d 93, 97–98 (7th Cir.1986); *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1202–03 (10th Cir.1986) (77% reduction in hours)); *see also Hensley*, 461 U.S. at 433; *cf. Harris v. Marhoefer*, 24 F.3d 16, 18-19 (9th Cir. 1994); *McGinnis v. Kentucky Fried Chicken*, 51 F.3d 805, 810 (9th Cir. 1994).

[72] *See* Docket No. 138 at 9-10.

[73] *See* Docket No. 128-2 at 6-7 (reduction of 7.35 hours for the opposition to summary judgment), Docket No. 138 at 9-10 (reduction of 12.8 hours).

[74] *See* Docket No. 128-2 at 607 (reduction of 6.25 hours for the opposition to summary judgment); Docket No. 138 at 9-10 (reduction of 1.1 hours).

[75] *See* Docket No. 138 at 12.



United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

| | | | |
|---|---|---|---|
| Dewitt M. Lacy | 239.7 | $275 | $65,917.50 |
| Adante Pointer | 43.95 | $300 | $13,185 |
| James Cook | 38 | $150 | $5,700 |
| Pardeep Heyer | 20.90 | $135 | $2,821.50 |
| Jillian Vida Smith | 27.50 | $135 | $3,712.50 |
| Pamela Y. Price | 18.15 | $700 | $12,705 |
| | | | **Total: $108,601.50** |

The court next addresses other factors which might adjust the lodestar amount.[76]

***First,*** the case did not require extensive time and labor over a short period.[77]

***Second,*** the skills required to perform the legal services properly were significant but not extensive.[78] The trial took three days and involved unlawful seizure and excessive force issues that were not particularly novel. Other than the lack of corroborating witnesses, Weaver himself concedes the case was simple and straightforward.[79]

***Third,*** because this was a short trial, Lacy was not unduly precluded from other employment. The attention the case required was normal. At the very least, Weaver does not specify delays he experienced as a result of this trial or unexpected occurrences impossible to plan around.

***Fourth,*** as for the customary fee in the community for similar work, Weaver provides declarations from four attorneys aside from his own suggesting that the hourly rates he requests are

---

[76] *See Richlin Sec. Serv. Co.*, 5535 U.S. at 576, 586; *PLCM Group, Inc.*, 4th at 1095; *Ketchum*, 24 Cal. 4th at 1132.

[77] *See* Docket No. 125 at 7.

[78] *See id.* at 8-9.

[79] *See id.* at 8.

United States District Court
For the Northern District of California

within the reasonable range by similar attorneys in the Bay Area. This is satisfactory evidence according to the Ninth Circuit.[80]

***Fifth,*** Burris took the case on a contingency-fee basis. Such cases risk no compensation whatsoever, yet have the high goal of vindicating the constitutional rights of plaintiffs such as Weaver.

***Sixth,*** the amount involved and the results obtained were modest.[81] Here, only one of eight claims went to trial, and the outcome yielded only $12,000, which has been further reduced to $10,030. Burris has extensive experience and a strong reputation, but Lacy cannot yet make the same claim. In similar cases, the Ninth Circuit has upheld a reduction of the lodestar amount by 50 percent, and has reversed an award of $148,000 of attorney's fees after a damages award of $34,000, because "[n]o reasonable person would pay lawyers $148,000 to win $3,400 thousand."[82]

***Seventh***, the question of the "undesirability" of the case is a close call. Civil rights cases, especially those involving police misconduct and excessive force, can be difficult to win. In addition, the homeless do not always garner the sympathy of jurors. But Weaver was a sympathetic plaintiff who suffered through no fault of his own, making the case more desirable.

***Eighth,*** attorney's fee awards in other cases tilts in favor of reducing the fees, but not quite as much as Kyle requests. Burris, Price, George Brown, and Na'il Benjamin's declarations support an hourly rate higher than defense counsel's own billable rate of $170 per hour and Lacy's assessed

---

[80] *See, e.g., United Steelworkers*, 512 F.3d at 564.

[81] *See Hensley*, 461 U.S. at 430 n.3.

[82] *McGinnis*, 51 F.3d at 810.

**United States District Court**
For the Northern District of California

rate of $175 in the Eastern District.[83] However, billing rates are generally higher in the Bay Area than in the Eastern District.[84]

Overall, these factors do not suggest to the court any adjustment either positive or negative.

Finally, the court grants Weaver's request for an award of non-statutory costs amounting to $9,134.81, an amount reasonable to compensate the attorneys for required out-of-pocket costs expended in the prosecution of this civil rights case.[85]

**IV.**

Weaver's compensatory damages are reduced from $12,000 to $10,030. Weaver is awarded fees in the amount of $108,601.50 and costs in the amount of $9,134.81. All other relief requested is denied.

**SO ORDERED.**

Dated: November 14, 2014

PAUL S. GREWAL
United States Magistrate Judge

[83] *See* Docket No. 138 at 8.

[84] *See* Docket No. 148.

[85] *See Thornberry v. Delta Air Lines, Inc.*, 676 F.2d 1240, 1244-45 (9th Cir. 1982); *Davis v. Mason County*, 927 F.2d 1473, 1487-1488 (9th Cir. 1991); *Davis v. City & County of San Francisco*, 976 F.2d at 1556.